IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FREDRIC Q. KENDRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 02-W-1034-N |
| | ) | (WO) |
| BROADCAST MEDIA GROUP, LLC, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTION

In this action, plaintiff Kendrick sued his former employer for race discrimination and retaliation in employment under 28 U.S.C. §§1331, 1343(4), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended by 42 U.S.C. §1981, and the Civil Rights Act of 1991, and pursuant to 42 U.S.C. §1981. Following the entry of a jury verdict in his favor, plaintiff moved for an award of front pay. For the reasons set out below, the court concludes that: (1) reinstatement is not a viable remedy in this case; (2) the appropriate length of time on which to base an award of front pay is two years; (3) defendant failed to show that plaintiff did not adequately discharge his duty of mitigation; (4) plaintiff's collateral earnings should not be counted as mitigating earnings; (5) front pay should be calculated based on plaintiff's original salary with defendant, plus raises; and (6) plaintiff's front pay award, reduced by his mitigation earnings, results in a balance of $0.00 due from defendant in front pay.

**Discussion**

In <u>Weaver v. Casa Gallardo, Inc.</u>, 922 F.2d 1515 (11th Cir.1991) (superceded by statute on other grounds), the Eleventh Circuit held that "in addition to back pay, prevailing Title VII plaintiffs are presumptively entitled to either reinstatement or front pay." <u>Id</u>. at 1528. Reinstatement is the preferred remedy in a wrongful discharge case. <u>Farley v. Nationwide Mutual Ins. Co.</u>, 197 F.3d 1322, 1339 (11th Cir. 1999). However, the court may award front pay in lieu of reinstatement in cases involving extenuating circumstances. Where there is evidence of discord and antagonism between the parties such as would render reinstatement ineffective as a make-whole remedy, where the plaintiff has been threatened or intimidated by the defendant, or where termination has harmed the plaintiff's emotional well-being, front pay may be awarded. <u>U.S. E.E.O.C. v. W & O, Inc.</u>, 213 F.3d 600, 619 (11th Cir. 2000).

In this case both parties have stipulated that reinstatement is not a viable option due to animosity between the parties. Therefore, the court finds that reinstatement is not a viable remedy and that front pay should be awarded in lieu of reinstatement. See <u>Pollard v. E.I. du Pont de Nemours & Co.</u>, 532 U.S. 843, 846 (2001). The only issue remaining for the court is the amount of front pay necessary to put plaintiff in the position he would have been in but for the discrimination.

Plaintiff seeks front pay from the date of trial (March 3, 2004) through March 3, 2006, by which time he expects to have attained the position he would have been in but for the discrimination. Plaintiff argues that two years' front pay at his former annual salary of $24,000 is a reasonable award. Since May 10, 2004, plaintiff has been employed by WIAT/CBS 42 in Birmingham, Alabama, where he works as a producer. Although he is now in a position to move back up the career ladder, plaintiff alleges that his wrongful termination from Channel 32 has hindered his progress in the television industry. Plaintiff testified that his current salary with CBS 42 is $21,700. This is $2,300 less than he was earning at the time of his dismissal by defendant. Furthermore, due to his discharge by the defendant, plaintiff has missed two years and eight months of advancement opportunities.

Thus, the court must address the issue of whether two years is a reasonable period to award front pay to plaintiff as 'make-whole' relief. In this case, there is a degree of uncertainty as to the length of time it will take plaintiff to attain the position he would have been in but for the discrimination. However, this uncertainty does not in and of itself preclude an award of front pay. See Munoz v. Oceanside Resorts, Inc.,223 F.3d 1340, 1349 (11th Cir.2000); see also Castle v. Sangamo Weston, Inc., 837 F.2d 1550, 1562 (11th Cir. 1988). Given plaintiff's age, the fact that -- having attained a bachelor's degree in broadcast journalism and a master's degree in management -- he is well equipped for a

3

career in the media, and the variety of positions he considers himself capable of filling in his chosen field, the court finds a period of two years from the date of trial an appropriate length of time for which to award front pay. See Armstrong v. Charlotte County Board of Commissioners, 273 F.Supp.2d 1312, 1317 (M.D.Fla. 2003).

In order to receive a front pay award, plaintiff has a duty to exercise reasonable diligence to mitigate his damages by seeking employment that is "substantially equivalent" to the position from which he was terminated. Reiner v. Family Ford, Inc., 146 F.Supp.2d 1279, 1287 (M.D. Fla. 2001); see also Richardson v. Tricom Pictures & Productions, Inc., 334 F.Supp.2d 1303, 1318 (S.D. Fla. 2004) ("The same mitigation of damages analysis applies to back pay and front pay awards."). The defendant bears the burden of proving that plaintiff failed to discharge this duty by demonstrating either that plaintiff did not make reasonable efforts to obtain comparable work, or that comparable work was available and plaintiff did not seek it out. Weaver, 922 F.2d at 1527.

Although the defendant has contended that plaintiff's efforts to find substitute employment were insufficient, it is not clear that plaintiff's search for employment fell short of what might reasonably be required by the court. Plaintiff has demonstrated that he approached and applied to a significant number of television and radio stations in Alabama and other states. After failing to gain "substantially equivalent employment"-- that is, "employment that affords virtually identical promotional opportunities, compensation, job

responsibilities, working conditions and status to those available to employees holding the position from which the plaintiff has been discriminatorily terminated" -- plaintiff was entitled to "'lower his sights' and accept non-comparable employment." Weaver, 922 F.2d at 1527. Plaintiff's decision to become self-employed may constitute reasonable diligence for purposes of determining whether plaintiff has mitigated his damages, provided it is a reasonable alternative to finding other comparable employment**.** See EEOC v Joe's Stone Crab, Inc., 15 F.Supp.2d at 1379 (citing Carden v Westinghouse Elec. Corp. 850 F.2d at 1005).  Thus, despite the fact that neither the plaintiff's automobile restoration business, nor his current employment at CBS 42 for a salary inferior to that which he earned when employed by the defendant, constitutes comparable employment, the court finds that plaintiff adequately discharged his duty of mitigation.

Despite plaintiff's arguments to the contrary, the law is clear that defendant is entitled to a credit against liability for any consequential damages which plaintiff avoided or minimized. Thus, front pay damages will be reduced by any actual earnings accrued by plaintiff in a new job. Weaver, 922 F.2d at 1527; see also Joe's Stone Crab, 15 F.Supp.2d at 1378**.** At the time of trial, plaintiff's sole income was generated by his automobile business. At that time, this business constituted substitute employment for plaintiff's job with defendant, and actual earnings by plaintiff in the period between trial and the start of his job at CBS 42 will count as credits against defendant's liability. However, since

commencing full-time employment with CBS 42 on May 10 2004, plaintiff has cut back the time he devotes to his automobile restoration business to two days a week. Thus, as of May 10, 2004, the court will consider plaintiff's employment at CBS 42 as constituting replacement employment for his job with defendant, and time spent on his automobile restoration business will be regarded as part-time work. Plaintiff's CBS 42 employment is substantially consistent with plaintiff's original job at Channel 32. Under the collateral source doctrine, funds unrelated to the conduct at issue are not counted as mitigating earnings in Title VII actions. Civil Rights Act 1964 §701 et seq., as amended, 42 USCA §2000e et seq.; see Joe's Stone Crab,15 F.Supp.2d at 1364. Therefore, additional income that plaintiff has earned from this source since May 10, 2004, will not count toward any credit against defendant's liability.          The only remaining question is the appropriate salary upon which to base plaintiff's front pay award. Plaintiff has argued that, if the Court concludes that any front pay award must be mitigated by plaintiff's actual earnings, the Court should bear in mind that plaintiff's salary at Channel 42 could have exceeded $24,000. Plaintiff contends that, based on the salaries of several other Channel 32 employees, plaintiff's salary at Channel 32 during the two year period for which front pay is sought could have ranged from $36,000 to $90,000. Plaintiff has further argued that the Court should take into account additional earnings plaintiff might have made had he enjoyed the support of other employees of the company, or through commission.

Front pay awards should aim to replicate the effects of reinstatement, and the Court must therefore attempt to compensate plaintiff for what he has lost. However, plaintiff bears the burden of proving that loss. Although plaintiff's termination deprived him of his annual salary of $24,000, it is not clear that, had he remained at Channel 32, his salary would have risen significantly over the two year period in question. The only evidence offered by plaintiff in support of his argument that front pay damages should be calculated at a higher rate is his belief that, given the chance, he would have enjoyed success at Channel 32 similar to that of employees like Rachel Loftus and Lyn Gilreath, who were earning $50,000 and $90,000 respectively. Plaintiff argues that the decision in <u>Virgo v Riviera Beach Associates, Ltd.</u>, 30 F.3d 1350 (11th Cir.1994), removes the need for him to prove his claim more comprehensively. In that case, the Eleventh Circuit determined that defendant's failure to show any "specific examples how plaintiff's figures are inaccurate or unreasonable" would sustain an award of front pay based on plaintiff's calculations. <u>Id</u>. at 1364.

However, there are two important distinctions between <u>Virgo</u> and the present case. First, in <u>Virgo</u> plaintiff argued only that her front pay damages should be elevated by annual cost of living adjustments of three percent. This type of increase has been a common feature of cases in which front pay has been awarded. Second, plaintiff's claim for such increases was supported by the testimony of an expert witness. In contrast, plaintiff

7

in the present case makes a claim more ambitious than that in <u>Virgo</u>, yet he has offered the Court less evidence to support his claim. To demand that defendant adduce specific examples of how such a speculative claim is inaccurate would be to place an unreasonable burden on defendant. Therefore, front pay will be calculated based on plaintiff's original salary with defendant, at an annual rate of $24,000.

Thus, plaintiff is entitled to two years of front pay in the amount of $48,000. However, this amount must be reduced by plaintiff's earnings over the two year period. This mitigation calculation must take into account any variations in plaintiff's earnings over the two year period. Thus, for the initial period between trial and plaintiff's commencing employment at CBS 42 on May 9, 2004, mitigation of front pay must be calculated based on plaintiff's annual earnings through his automobile restoration business ($32,000). Plaintiff has testified that he could expect several raises in his salary at CBS 42 within the two year period for which front pay is being awarded. For the period beginning May 9, 2004 and ending December 31, 2004, front pay will be calculated based on plaintiff's starting salary at CBS 42 of $21,700. For the period beginning January 1, 2005 and ending July 4, 2005, front pay will be calculated based on plaintiff's increased salary of $23,800. For the period beginning July 5, 2005 and ending March 3, 2006 (the end of the two year front pay period) front pay will be calculated based on plaintiff's increased salary of $26,000. Thus, plaintiff's total earnings over the two year period for which front pay is

being awarded equals $49,229, an amount that exceeds the award of front pay in this case by $1,229.

## Conclusion

Accordingly, judgment will be entered in this case in favor of plaintiff and against defendant for $48,000 in front pay, less mitigation of $49,229, for a total of $0.00.

DONE, this 20th day of July, 2005.

/s/ Susan Russ Walker  
SUSAN RUSS WALKER  
UNITED STATES MAGISTRATE JUDGE